IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BENTLEY A. HOLLANDER | : | CIVIL ACTION |
|  | : | No. 2:10-cv-00429 |
| Plaintiff/Relator, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| TIMEX GROUP USA, INC., f/k/a | : |  |
| TIMEX CORPORATION | : |  |
|  | : | March 2, 2010 |
| Defendant. | : |  |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINITFF'S COMPLAINT

### I.    INTRODUCTION

The defendant, Timex Group USA, Inc (hereinafter "Timex") submits this memorandum of law in support of its motion to dismiss plaintiff Bentley A. Hollander's (hereinafter "Hollander") complaint under Federal Rule of Civil Procedure 12(b)(6) (hereinafter "Rule 12(b)(6)") for failure to state a claim upon which relief may be granted and under Federal Rule of Civil Procedure 9(b) (hereinafter "Rule 9(b)") for failure to plead his allegations of fraud with the required particularity.

Hollander filed this qui tam action asserting one-hundred and thirty-five counts of false patent marking under 35 U.S.C. § 292 based on the continued listing of patent numbers on some of Timex's products, instructional manuals and/or promotional materials, after the patents' term of enforceability expired. There are several fundamental flaws with Hollander's complaint that require it be dismissed. First, Hollander's claim that Timex merely continued to mark its products, instructional manuals and/or

promotional materials after the expiration of the patents does not constitute false marking under § 292 and, therefore, the complaint should be dismissed for failure to state a claim upon which relief can be granted. See Fed. Civ. Pro. 12(b)(6). Second, Hollander's allegations do not permit this Court to infer more than a mere possibility of misconduct by Timex. Hollander not only fails to plead facts showing actual knowledge of patent expiration but his complaint is devoid of any facts that support a reasonable inference that Timex marked its products, instructional and/or promotional materials with the intent to deceive the public. Instead, his complaint consists of conclusory statements which merely parrot the statutory language of § 292. As such, the complaint does not meet the requisite pleading requirements of Rule 12(b)(6) and must be dismissed.

Third, because a false marking claim is premised on bad faith, it should be viewed as a fraud-based claim. Fraud-based allegations must be pled with particularity pursuant to Rule 9(b). Hollander's conclusory allegations are insufficient to support the fraud-based intent to deceive element of § 292. Hollander's failure to plead appropriate particularized facts to support Timex's alleged "intent to deceive" provides further grounds for dismissal.

Finally, the first fifty-six counts of the complaint which seek recovery for purported violations that occurred prior to January 29, 2005 are time barred by the five-year statute of limitations which governs civil fines. Therefore, those claims must be dismissed.

## II.   **STATEMENT OF FACTS**

Hollander identifies fifty-seven styles of Timex watches that are allegedly marked with one of three patents, or a combination thereof in violation of 35 U.S.C. § 292. The patents identified and attached as exhibits to the complaint are:

1. U.S. Patent No. 4,527,096, entitled "Drive Circuit For Capacitive Electroluminescent Panels" (hereinafter "'096 Patent");

2. U.S. Patent No. 4,775,964, entitled "Electroluminescent Dial for an Analog Watch and Process for Making It" (hereinafter "'964 Patent"); and

3. U.S. Patent No. 4,912,688, entitled "Automatic Display Illumination For A Multimode Wristwatch" (hereinafter "'688 Patent").

(Compl. ¶ 20.) The complaint alleges that the '096 Patent was filed on February 8, 1984, issued on July 2, 1985 and its term of exclusivity expired on February 4, 2004. (Compl. ¶¶ 20, 24.) It also alleges that the '094 Patent was filed on January 11, 1988, issued on October 4, 1988 and its term of exclusivity expired on January 11, 2008. (Compl. ¶¶ 20, 25.) Finally, the complaint alleges that '688 Patent was filed on August 11, 1989, issued on March 27, 1990 and its term of exclusivity expired on August 11, 2009. (Compl. ¶¶ 20, 26.)

Hollander's remaining allegations are primarily conclusory. For example, in the section entitled "Factual Background" he alleges that "[u]pon information and belief, Timex knew or reasonably should have known" that the watches in question were marked with expired patents. (Compl. ¶¶ 32, 42, 52.) Hollander also alleges "[u]pon information and belief" that Timex did so "for the purpose of deceiving the public into believing that such products are covered by the ['096, '964 or '688] Patent." (Compl. ¶¶ 34, 44, 54.)

Hollander's allegations in each count are also conclusory and provide no factual support. Specifically, Hollander contends that:

1. "Timex has marked and continues to mark each unit of the [specific watch] and/or its accompanying instruction booklet with the ['096, '964, or 688] Patent. . . ." (See, e.g., Compl. ¶¶ 59, 395, 731) (emphasis added);

2. "Timex knows or reasonably should know that each unit of the [specific watch] it has manufactured and sold since [date patent expired] was not covered by the ['096, '964, or '688] Patent." (See, e.g., Compl. ¶¶61, 397, 733.); and

3. "Timex has violated 35 U.S.C. § 292(a) by marking or causing to be marked each unit of the [specific watch] and/or its accompanying instruction booklet with the ['096, '964, or '688] Patent since [date patent expired] for the purpose of deceiving the public." (See, e.g., Compl. ¶¶ 62, 398, 734.)

As will be demonstrated below, these allegations are woefully insufficient to state a claim

upon which relief can be granted.

### III.   **LEGAL STANDARDS**

#### A.   **Rule 12(b)(6)**

In order, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that

'raise a right to relief above the speculative level on the assumption that the allegations in

the complaint are true (even if doubtful in fact)." Victaulic Co. v. Tieman, 499 F.3d 227,

234 (3d Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).

It is well established that "[a] pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.' . . . . Nor does a complaint

suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 557).

The Supreme Court recently analyzed the pleading requirements of Federal Rule

of Civil Procedure 8 (hereinafter "Rule 8") on a motion to dismiss:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to legal
> conclusions. Threadbare recitals of the elements of a cause
> of action, supported by mere conclusory statements, do not
> suffice. . . . Second, only a complaint that states a plausible

> claim for relief survives a motion to dismiss . . . where the
> well-pleaded facts do not permit the court to infer more
> than the mere possibility of misconduct, the complaint has
> alleged-but it has not "show[n]"-"that the pleader is entitled
> to relief.

Iqbal, 129 S.Ct. at 1950 (citations omitted).  Accordingly, courts are directed to engage

in a two-part analysis where they (1) identify the allegations that are no more than

conclusions and, therefore, not entitled to the assumption of truth and (2) identity well-

pleaded factual allegations and determine whether those allegations plausibly give rise to

an entitlement to relief.  Id.  Once Hollander's complaint is examined in this manner, it is

evident that he has not set forth factual allegations which plausibly give rise to an

entitlement of relief.

**B.** **Rule 9(b)**

The false marking statute states in relevant part:

> Whoever marks upon, or affixes to, or uses in advertising
> in connection with any unpatented article, the word
> "patent" or any word or number importing that the same is
> patented ***for the purpose of deceiving the public***. . . [s]hall
> be fined not more than $500 for every such offense.

35 U.S.C. § 292(a) (emphasis added).  At least one court has held that because a violation

of § 292 is predicated on an intent to deceive to the public—i.e. a fraud against the

public—false marking claims are subject to the heightened pleading requirements of Rule

9(b).  Juniper Networks v. Shipley, Civ. 09-0696, 2009 WL 1381873, at *4 (N.D Cal.

May 14, 2009) ("The false marking statute is a fraud-based claim, which is subject to the

pleading requirements of Federal Rule of Civil Procedure 9(b)") (citations omitted) [1]; see

---

[1] The Juniper Networks court disagreed with a Texas district court that suggested that Rule 9(b) does not
apply to § 292 claims and criticized it for failing to cite "any compelling authority or provide analysis to
support that conclusion".  Juniper Networks, 2009 WL 1381873, at *4 n.3.  In contrast to the Texas
decision, the Juniper Networks court found strong support for its conclusion, citing several decisions issued
by the 9th Circuit Court of Appeals, holding that fraud-based claims are subject to Rule 9(b). Id. at *4
(citing Berson v. Applied Signal Technology, Inc., 527 F.3d 982, 987 (9th Cir. 2008) ("[p]laintiffs must

also <u>Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.</u>, No. 00-
2430, 2006 WL 4448613, at *24 (N.D. Ala. Jan. 13, 2006), <u>aff'd in relevant part by</u> 482
F.3d 1347 (Fed. Cir. 2007) ("Both the language of Section 292 and the binding authority
in this Circuit place on the [plaintiffs] the burden to plead and produce facts
demonstrating that the [defendants], in marking the solution with the '515 patent, had the
specific intent to deceive the public into believing something that the plaintiffs knew to
be false.")

The Federal Circuit has not had the occasion to determine whether the heightened
pleading requirement applies to false marking claims, but it did recently hold that
inequitable conduct claims—which also require a showing of a defendant's intent to
deceive—are subject to Rule 9(b). <u>Exergen Corp v. Wal-Mart Stores, Inc.</u>, 575 F.3d
1312, 1325-31 (Fed. Cir. 2009)[2]. The Federal Circuit explained in detail the stringent
requirements of Rule 9(b) applied to fraud-based claims:

> Rule 9(b) requires that '[i]n all averments of fraud or
> mistake, the circumstances constituting fraud or mistake
> shall be stated with particularity." . . . As the Seventh
> Circuit has held, the "circumstances" in Rule 9(b) must be
> set forth with "particularity," i.e., they must be pleaded in
> detail'-"[t]his means *the who, what, when, where and*

'state with particularity facts giving rise to a strong inference' that defendants acted with the *intent to
deceive* ....") (emphasis added); <u>citing Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1103-04 (9th
Cir.2003) (claims that are "grounded in fraud" or that "sound in fraud" are subject to Rule 9(b)); <u>comparing
Eisai Co., Ltd. v. Teva Pharmaceuticals USA, Inc.</u>, 557 F. Supp. 2d 490, 493 (D.N.J.2008) (claim for
inequitable conduct, which requires an intent to deceive the Patent and Trademark Office, is subject to
heightened pleading standard under Rule 9(b).))

The Third Circuit Court of Appeals has also required that fraud-based claims comply with Rule 9(b).
<u>See, e.g., Lum v. Bank of America</u>, 361 F.3d 217, 220 (3d Cir. 2004) (holding that a RICO claim is
predicated on mail and wire fraud and, therefore, must be pled with particularity and because the particular
antitrust claim before the court was grounded in fraud, it, too, had to comply with Rule 9(b)); <u>see also
Kemezis v. Matthew</u>, No. 07-5086, 2008 WL 5191587, at *2 (E.D. Pa. Dec. 10, 2008) (holding that claims
made under the Truth in Lending Act and Real Estate Settlement Procedures Act are grounded in fraud and,
therefore, must be pled with particularity pursuant to Rule 9(b)).
[2] A plaintiff alleging that a defendant has obtained its patent through inequitable conduct before the Patent
and Trademark Office must demonstrate that the defendant's actions were done "with the intent to deceive"
the PTO. <u>Exergen</u>, 575 F.3d at 1327 n.3.

> *how" of the alleged fraud* . . . . Based on the foregoing and
> following the lead of the Seventh Circuit fraud cases, we
> hold that in pleading inequitable conduct in patent cases,
> Rule 9(b) requires identification of the specific who, what,
> when where, and how of the material misrepresentation or
> omission committed before the PTO.

Id. at 1326-27 (emphasis added, internal citations omitted).  Because § 292 requires

purposeful deceit, Rule 9(b) pleading requirements should apply.

## IV.    ARGUMENTS

### A.  Marking An Article With an "Expired" Patent is Not a Violation of 35 U.S.C. § 292.

A defendant must mark an "unpatented" article as "patented" in order to be found

liable for violating the false marking statute.  See 35 U.S.C. § 292(a).  Here, Timex's

articles are "patented".  This is so even though Timex's right to exclude others from

practicing the subject matter of its patents has expired.  An analysis of the relevant

statutory provisions of the Patent Act demonstrates that an article is "patented" when the

article embodies the subject matter of a patent and, therefore, an article does not become

"unpatented" simply because the patentee's right to exclude others from making the

article has expired.  Further, there are strong public policy reasons for finding that this

conduct should not be considered a violation of the false marking statute.

> *1.   While This Issue Is a Matter of First Impression, This Court Should Find
> That Marking a Product with a Patent When the Patentee No Longer Has
> the Right to Exclude Others From Practicing the Patent's Subject Matter,
> Is Not a Violation of § 292.*

While a case which raises this issue, among others, is currently pending before the

Federal Circuit, Pequignot v. Solo Cup Co., No. 2009-1547, the Federal Circuit has never

addressed the issue presented in this case: whether an article that embodies the subject-

matter of a patent is "unpatented" if the patentee's right to exclude others has expired.

That is not to say, however, that no court has commented on the issue. Notably, at least three courts have remarked that a product bearing an "expired" patent number does not violate § 292. See Arcadia Mach. & Tool Inc. v. Sturm, Ruger & Co., Inc., 786 F.2d 1124, 1125 (Fed. Cir. 1986) (noting that the presence of expired patent numbers on firearm box labels is not violative of § 292); FMC Corp. v. Control Solutions, Inc., 369 F. Supp. 2d 539, 584 (E.D. Pa. May. 16, 2005) (with regard to expired patents the court said, "This Court finds no reason why FMC may not display its patent number to inform the public of where to acquire the informational and teaching *quid pro quo* that underlies the granting of patent protection."); Wilson v. Singer Mfg. Co., 30 F. Cas. 223, 224 (N.D. Ill. 1879) ("I do not see anything in the spirit of this clause of the law which prevents the manufacturer from continuing to affix such [mark] after the expiration of the patent.").

The two courts that have come to a different conclusion do so by misreading the patent statute. See Pequignot v. Solo Cup Co., 540 F. Supp. 2d 649 (E.D. Va. Mar. 24, 2008) (hereinafter referred to as "Pequignot I"); D.P. Wagner Mfg. Inc. v. Pro Patch Sys., Inc., 434 F. Supp. 2d 445, 452 n.3 (S.D. Tex. 2006). Without any analysis of the plain meaning or legislative intent and purpose of § 292, the court's decisions in these cases incorrectly read the term "unpatented" to encompass expired patents. In Pro Patch the court failed to provide any analysis for its conclusion:

> It is self evident that once a patent has expired it provides no protection for the article that it described. It necessarily follows that an article when marked with an expired patent number nonetheless remains an "unpatented article" within the meaning of § 292.

Pro Patch, 434 F. Supp. 2d at 452 n.3. As such, this case is unpersuasive.

Furthermore, this statement demonstrates a misunderstanding of the patent law. A patent never provides protection for the article it describes; rather, the patent provides the patentee with an exclusive right to make, sell, etc. the patented article; therefore, the patent "protects" the patentee. See 35 U.S.C. § 154 ("Every patent shall contain . . . a grant to the patentee . . . the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States"). While a patentee may no longer have the right to exclude others from making the patented article, the article itself remains "patented".[3]

The court in Pequignot I, fell victim to the same misapprehension. Specifically, the court treated the status of an article as if it were dependent upon the patentee's right to exclude, instead of considering whether the article embodies the subject matter of the patent. See id. at 652 ("An article that was once protected by a now-expired patent is no different than an article that has never received protection from a patent."). The Pequignot I court cited to a number of patent infringement cases in support of its conclusion. Id. at 652-53. Those decisions are inapplicable to the context of false marking, however. Because the focus of an infringement action is whether the patentee can exclude the alleged infringer, in the infringement context, "unpatented" has been used to indicate that there is no right to exclude. See, e.g., Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141 (1989) (dealing with a manufacture's ability to exclude others though no patent had ever been obtained); Prestole Corp. v. Tinnerman Prods., Inc., 271 F.2d 146, 155 (6th Cir. 1959) (referring to the patentee's right to exclude the court said, "[A]fter the expiration of a patent, the invention originally protected thereby becomes, for all purposes, an unpatented device."); Sylvania Indus. Corp. v. Visking

---

[3] See the discussion in Section A.2.

Corp., 132 F.2d 947, 949-50 (4th Cir. 1943) (similarly, dealing with the right to exclude).

As discussed below, the status of an article does not depend on what rights are possessed

by the patentee.  Consequently, the court's reliance on the use of these words in patent

infringement cases was misplaced.

> 2.    *The Patent Act Treats an Article as Patented When it Embodies the Subject Matter of a Patent.*

To determine whether Timex's articles are "unpatented," it is necessary to

examine why an article is referred to as "patented."  See 35 U.S.C. § 292 ("Whoever

marks upon, or affixes to, or uses in advertising in connection with any ***unpatented***

article the word 'patent'. . ." violates § 292).  Articles are properly referred to as patented

when they embody the subject-matter of a patent.  See 35 U.S.C. § 112 ("The

specification shall contain a written description of the invention . . . [and] one or more

claims particularly pointing out and distinctly claiming the subject matter which the

applicant regards as his invention."); Id. § 154 ("A copy of the specification and drawing

shall . . . be a part of such patent.")  Timex's products embody the subject-matter of the

patents; consequently, Timex's products are patented.  See id.

A patent contains two main parts relevant to this analysis: *(1) the specification,*

(see id. § 112 (a description of the invention and claims indicating the subject-matter that

is covered), and *(2) a grant to the patentee to exclude others from manufacturing the*

*article* (see id. § 154 ("Every patent shall contain . . . a grant to the patentee . . . of the

right to exclude others from making . . . the invention . . . [and] the specification . . . .").

The fact that the patent grants to the patentee a right to exclude cannot be the reason why

an article is considered patented.  Rather, an article is properly considered "patented" when it embodies the subject-matter of the patent.[4]  See id. §§ 112, 154.

The language of § 271 confirms this conclusion.  See 35 U.S.C. § 271 ("whoever without authority makes, uses, offers to sell, or sells any *patented invention*, within the United States . . . *during the term of the patent therefor*, infringes the patent." (emphasis added)).  In determining whether an article made by someone other than the patentee infringes the patent two questions must be answered affirmatively.  See id.  The first is: does this article embody the patented invention?  See id. ("whoever . . . makes . . . any patented invention . . . .").  The second is: was the infringing article made during the term of the patent?  Id. ("during the term of the patent therefore").  The fact that the second question exists proves that whether an article is patented does not depend upon whether the term of the right to exclude has expired.  See Argo Dutch Indus. Ltd. V. United States, 508 F.3d 1024, 1032 (Fed. Cir. 2007) (it is a "cardinal principle of statutory construction that a statute ought . . . to be so construed that . . . no clause, sentence, or word shall be superfluous.").  If the word "patented" only applied while the patentee had the right to exclude, it would never be necessary to ask the second question; the second question would necessarily be an integral part of the first question.  This would render the

---

[4] Further, while the right to exclude is limited in time, (35 U.S.C. § 154(a)(2) ("such grant shall be for a term . . . ending 20 years from the date on which the application for the patent was filed in the United States . . . ."), the specification is not, nor is any other aspect of a patent.  Each and every temporal limitation found in the Patent Act applies only to the patentee's right to exclude.  See id. § 154 (temporal limitation only applied to patentee's right to exclude).  For example, each instance of the word "expire(s)(ed)..." refers to the Patentee's right, and not to the status of an article as patented.  Id. § 41 (tying the Patentee's right to exclude to the payment of fees); id. § 103 (linking the Patentee's rights to exclude others under a patent for a non-obvious composition of matter also claimed in an earlier, broader patent to the expiration of the Patentee's right to exclude granted by the earlier patent); id. § 135 (dealing with interferences; who is the proper patentee with the right to exclude); id. § 156 (referring to the patent "term," which deals only with § 154's grant to the Patentee of the right to exclude); id. § 251 (also dealing with the patent "term").

phrase "during the term of the patent therefore" superfluous. Such a construction is impermissible. See Argo Dutch, 508 F.3d at 1032.

The legislative history of § 292 also supports this analysis. Congress was aware that its false-marking statute had not been interpreted by the Federal courts as applying to expired patents, and Congress *rejected* proposed amendments which, arguably, would have caused the statute to apply to expired patents. In 1860, a bill was introduced in Congress that would have changed the wording of the statute from "unpatented" to *"not at the time* secured by a patent." S. 424, 36th Congress, 1st Session, § 20, April 26, 1860, attached hereto as Exhibit A (would have amended the statute to impose liability "if any person shall. . . affix. . .to any article... *not at that time* secured by a patent, the word patent. . .with intent to deceive the public. . . .") But that proposed amendment to the predecessor of § 292 was rejected, thus indicating Congress' intention that the scope and meaning of the term "unpatented" should *not* be expanded.

Consequently, the term "patented" must apply to articles that embody a patent's specification regardless of the status of the patentee's right to exclude. Timex's articles embody the patents with which they are marked; therefore, Timex's articles are patented. See 35 U.S.C. §§ 112 & 154. Because § 292's relevant proscription applies only to articles that are unpatented, Timex cannot, as a matter of law, have violated § 292. Id. § 292. Therefore, the plaintiff has failed to state a claim upon which relief may be granted and this Court should grant Timex's motion to dismiss.

> 3.   *Continuing to Mark an Article with an "Expired" Patent Promotes Competition and Innovation.*

There are strong public policy reasons in favor of marking a product with the patent after the term of exclusion has expired. The underlying purpose of the false

marking statute is to foster competition and innovation. See Forest Group, Inc. v. Bon Tool Co., 590 F.3d 1295, 1302 (Fed. Cir. 2009) (citations omitted). In Clontech Labs., Inc., v. Invitrogen Corp., the court explained that false marking is a problem because when a mark is actually false it not only misleads the public, but also makes it very difficult for the public to ascertain that the article does not embody any of the inventions described in the patent. 406 F.3d 1347, 1356-57 (Fed. Cir. 2005). A potential competitor would be required to expend significant resources to determine that the invention described in the patent is not embodied by the article. See id. at 1357 n.6. Therefore, this conduct would tend to limit competition and innovation.

On the other hand, where a patentee's right to exclude others has merely expired, an interested party only needs to briefly consult a patent to ascertain that fact—the patent's term is obvious on the face of the patent. As a result, a potential competitor could immediately conclude that he or she may practice the subject matter embodied in the patent without infringing on the patentee's rights. Moreover, the continued marking of the article with the patent actually promotes competition and innovation. By marking a product with the patent, a potential competitor can quickly identify and obtain a copy of the patent which provides the competitor with the invention's description, enabling the competitor to manufacture the article and discover the best mode for manufacturing the article. See 35 U.S.C. §§ 112 & 154. This allows the potential competitor to learn how to make the product and possibly use it as a basis to devise new innovations that would improve it. Other courts have recognized this value. See, e.g., Pequignot v. Solo Cup Co., 646 F. Supp. 2d 790, 798 (E.D. Va. Aug. 25, 2009) (hereinafter referred to as "Pequignot II") ("marking an article with an expired patent can work to the marker's

detriment, because public patent documents reveal all of the previously patented design features that are now in the public domain, thus creating a road map for anyone wishing to legally copy the product.")

Accordingly, the pursuit of competition and innovation is actually furthered by the continued marking of an article with a patent even after the patentee no longer has the right to exclude others from making the article. Therefore, such conduct should not be penalized with a civil fine pursuant to § 292.

**B. Even if Marking With an "Expired" Patent May Constitute a Violation of § 292, Hollander Does Not Allege Facts Which Support an Intent to Deceive and, Therefore, Fails to State a Claim Upon Which Relief Can be Granted.**

Even if this Court determines that false marking with an "expired" patent may constitute a violation of § 292, Hollander must allege facts that would support at least a *reasonable inference* that Timex marked its products with those patents with the *intent to deceive the public.* Douglas v. Wal-Mart Stores, Inc., No. 05-152, 2005 WL 3234629, at *7 (E.D. Pa. Nov. 30, 2005) (dismissing counterclaim plaintiff's false marking cause of action where the allegations did not permit an inference of intent). As detailed below, Hollander has not met the pleading requirements of either Rule 8(a) or Rule 9(b) and, therefore, his complaint must be dismissed.

*1.     Dismissal of Hollander's Complaint is Warranted under Rule 8(a).*

To survive a motion to dismiss a plaintiff must plead sufficient facts to allow a reasonable inference that the defendant intended to deceive the public. See 35 U.S.C. § 292(a); see also Forest Group, 590 F.3d at 1300 (citation omitted); FMC Corp., 369 F. Supp. 2d at 584 ("A claim for false marking fails absent evidence of an actual intent to deceive.") (citing Mayview Corp. v. Rodstein, 620 F.2d 1347, 1360 (9th Cir.1980) ("an

actual intent to deceive the public is required for a violation of 35 U.S.C. § 292")). The

Federal Circuit recently reiterated that the intent to deceive is defined as "a state of mind

arising when a party acts with sufficient knowledge that what it is saying is not so and

consequently that the recipient of its saying will be misled into thinking that the statement

is true." Forest Group, Inc., 590 F.3d at 1300 (citing Clontech Labs., Inc., 406 F.3d at

1352). The bar for establishing deceptive intent is set high. Pequignot II, 646 F. Supp. 2d

at 796-97 (citing Brose v. Sears, Roebuck & Co., 455 F.2d 763, 768 (5th Cir.1972)

(holding that the plaintiff bears the burden to show that the defendant acted with intent to

deceive); Cent. Admixture Pharmacy Servs., 2006 WL 4448613, at *24 (noting that

"[t]he threshold for establishing a successful Section 292 claim is extremely high"); cf.

Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir. 2008)

([T]he inference [of deceptive intent] must not only be based on sufficient evidence and

be reasonable in light of that evidence, but it must also be the single most reasonable

inference able to be drawn from the evidence[.]")) (footnote omitted).  Hollander's

allegations fail to meet the Rule 8(a) pleading requirements for several reasons.

     First, Hollander does not allege facts that support a reasonable inference that

Timex had actual knowledge of the patents' "expiration", let alone that it marked its

products with the intent to deceive the public.  Hollander simply asserts in a conclusory

fashion that Timex "knew or reasonably should have known" that its products were

marked with expired patents.  (See, e.g., Compl. ¶¶ 32, 42, 52.)  These "facts" do not

raise Hollander's right to relief above mere speculation. See Victaulic, 499 F.3d at 234.

The multiple inferences of knowledge and deceit that Hollander asks this Court to make

are neither reasonable nor plausible.  Indeed, Judge Pratter of this district has recognized

that the intent to deceive element does not flow from the mere marking of a product with an accurate, albeit "expired", patent:

> Scant authority exists as to "whether continued use of a patent number on an article after expiration of the patent constitutes culpable mismarking. . . . This Court finds no reason why FMC may not display its patent number to inform the public of where to acquire the informational and teaching *quid pro quo* that underlies the granting of patent protection.

FMC Corp., 369 F.3d at 584 (citation omitted).

Second, Hollander does not identify anyone who was actually aware of the alleged patent expiration, let alone aware of the patent expiration at the time the products were marked. See A.G. Design & Assocs., LLC v. Trainman Lantern Co., No. C07–5158RBL, 2009 WL 168544, at *2-3 (W.D. Wash. Jan. 23, 2009) (to be actionable under § 292 the marking must have been false at the time the item was marked); Nichols v. Newell, 18 F. Cas. 199, 203 (D. Mass. 1853) (same).

Third, Hollander does not offer one specific example of a mismarked product—he cites to no one product that was produced on one specific date. While he does denote the dates the patents associated with Timex's products were filed, issued and expired (see Compl. ¶ 20, 24-26), such facts do not and cannot logically support the conclusion that Timex actually knew that the patents allegedly marked on it products were expired. See Exergen, 575 F.3d at 1329 n.5 ("A reasonable inference is one that is plausible that flows logically from the facts alleged, including any objective indications of candor and good faith." (citation omitted)).

Hollander's lack of allegations containing the necessary supporting facts is further underscored by the fact that he does not expressly pinpoint whether the patent markings

are directly on the products or only on Timex's instruction manuals or promotional materials. Instead, Hollander vaguely alleges under the "Factual Background" that "Timex has marked or caused to be marked, and continues to mark or causes to be marked, the ['096, '964, or 688] Patent on . . . products, directly or on the instructional *and/or* promotional materials thereof . . . ." (Compl. ¶¶ 28, 38, 48) (emphasis added.) In each count he similarly contends "Timex has marked and continues to mark each unit of the [specific watch] *and/or* its accompanying instruction booklet with the ['096, '964, or 688] Patent. . . ." (See, e.g., Compl. ¶¶ 59, 395, 731) (emphasis added). This manner of pleading suggests that Hollander's complaint was filed as a fishing expedition with only a hope that discovery would reveal evidence of actionable mismarking.

Hollander's allegations as described above certainly do not and cannot logically support his conclusion that Timex intended to deceive the public. Pequignot II, 646 F. Supp. 2d at 797, n.12 (Plaintiff "equates knowledge of falsity with intent deceive" however, this "interpretation would eliminate any distinction between intent to deceive, which § 292 requires, and knowledge of falsity, a different state of mind."); see also Clontech Labs., Inc., 406 F.3d at 1352 ("We see no reason to interpret the statute differently to render it a statute of strict liability for mismarking.")

Moreover, based on the "facts" alleged by Hollander a more reasonable inference could be that the machinery used to mark Timex's products with the patent numbers was not updated and/or the instructional manuals and/or promotional materials have not been revised. The "facts" alleged by Hollander could just as easily lead this Court to conclude that the markings were merely inadvertent or mistaken. "Unintentional mistakes in marking-products do not establish a violation of § 292." Arcadia Machine & Tool, Inc.

v. Sturm, Ruger & Co., 227 USPQ 655, 656 (C.D. Calif. 1985) aff'd, 786 F.2d 1124

(Fed. Cir. 1986) (citation omitted); see also Johnston v. Textron, Inc., 579 F. Supp. 783,

795 (D. R.I. 1984) ("The statute being penal in nature, it must be construed strictly, and

intent will not be inferred from facts which show that the incorrect patent marking was

the result of mistake and inadvertence.") (citation omitted).  Consequently, deceptive

intent is not the reasonable inference, much less the single most reasonable inference, to

be drawn from the facts alleged.  See Star Scientific, Inc., 537 F.3d 1357, 1366 (holding

that "[T]he inference [of deceptive intent] must not only be based on sufficient evidence

and be reasonable in light of that evidence, but it must also be the single most reasonable

inference able to be drawn from the evidence" in an inequitable conduct cause of action.)

(citation omitted).

Finally, Judge Rubreno's dismissal of a false marking complaint in Douglas is

instructive.  In that case, the counterclaim plaintiff claimed that the opposing party's

assertion that he was "experienced in intellectual property litigation," was a sufficient

fact to support its conclusory allegation that the alleged false marking was done with an

intent to deceive the public. Douglas, 2005 WL 3234629, at *7.  Judge Rubreno rejected

this argument because he found that the statement did not permit the inference of the

necessary intent.  Id.  Here, Hollander alleges even less factual support than the Douglas

plaintiff.  As a result, Hollander's complaint must also be dismissed.

Because Hollander is "armed with nothing more than conclusions" he may "not

unlock the doors of discovery". Iqbal, 129 S. Ct. at 1950.  Therefore, his complaint must

be dismissed for failure to state a claim upon which relief can be granted.

2.    *Dismissal of Hollander's Complaint is also Warranted Under Rule 9(b).*

While dismissal is warranted under the pleading requirements of Rule 8(a), dismissal is particularly appropriate under Rule 9(b) because Hollander has failed to plead the intent to deceive element with sufficient particularity. "The false marking statute is a fraud-based claim, which is subject to the pleading requirements of Federal Rule of Civil Procedure 9(b)." Juniper Networks, 2009 WL 1381873, at *4 (citation omitted); see also Lum, 361 F.3d 217, 220 (holding that a RICO claim is predicated on mail and wire fraud and, therefore, must be pled with particularity and because the antitrust claim before it was grounded in fraud, it also had to comply with Rule 9(b)); Kemezis, 2008 WL 5191587, at *2 (holding that claims made under the Truth in Lending Act and Real Estate Settlement Procedures Act are grounded in fraud and therefore must comply with Rule 9(b)). Further, courts have applied heightened pleading requirements in other qui tam actions. Grynberg v. Alaska Pipeline Co., No. 95-cv-0725, 1997 WL 33763820, at *2 (D.D.C. Mar. 27, 1997) (rejecting plaintiffs' argument hat Rule 9(b) did not apply to qui tam action because the statute did not contain the word "fraud".) "It is the character of the claim-and not the particular language of the underlying statute that determines the application of Rule 9(b)." Id. at *3.

As discussed above, the Federal Circuit's recent interpretation and application of Rule 9(b) in Exergen is instructive here. The Exergen Court held that inequitable conduct claims, which also require proof of "intent to deceive", must conform to the heightened pleadings standards or Rule 9(b). Exergen, 575 F.3d at 1325-31. Hollander's complaint is woefully deficient. As noted above, Hollander does not identify one person aware of the patent expiration, let alone aware of that alleged fact at the time the products

were marked. He fails to allege one specific act of mismarking of a specific product on a specific day by a specific person.

Like the plaintiff in Exergen, Hollander has only generally alleged that Timex "knew or reasonably should have known" that its products were marked with expired patents. Compare (Compl. ¶¶ 32, 42, 52); with Exergen, 575 F.3d at 1330, (pleading stated that "Exergen was aware" of the other patents). Such general allegations are insufficient to support a reasonable inference that Timex actually knew that its products were marked with expired patents. Cf. Exergen, 575 F.3d at 1330 (finding that the assertion that "Exergen was aware" of the other patents was insufficient to support a reasonable inference that a relevant individual knew of the allegedly material information contained in the other patents); see also Juniper Networks, 2009 WL 1381873, at *4 ("[Plaintiffs] conclusory allegations that [Defendant] 'knew' his reference to the patents was 'false' are thus insufficient to plead an intent to deceive under Section 292(a)").

Not only are Hollander's allegations of knowledge and deceit purely conclusory, several of the allegations pertaining to deceptive intent were pleaded solely on "information and belief." (See, e.g., Compl. ¶ 34 ("Upon information and belief, Timex has marked, and continues to mark, its products with the '096 Patent after its date of expiration for the purpose of deceiving the public into believing that such products are covered by the '096 Patent." )). While "[p]leading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control . . . the pleading [must set] forth the specific facts upon which the belief is reasonably based." Exergen, 575 F.3d at 1330 (citations omitted); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997) ("While state of

mind may be averred generally, plaintiffs must still allege facts that show the court their basis for inferring that the defendants acted with 'scienter'.").

A pleading like Hollander's which does not provide the information on which it relies or any plausible reasons for its "belief" is improper. Exergen, 575 F.3d at 1331. Hollander's pleading does not set forth any facts which "plausibly suggest any deliberate decision'" to knowingly mark Timex's products with false patent information –"a necessary predicate for inferring deceptive intent." Exergen, 575 F.3d at 1331 (citation and internal quotations omitted).

Further, as in Exergen, Hollander's pleading does not contain specific factual allegations to show that an individual who had responsibility for reviewing or approving the manufacture or production of Timex's products and/or instruction manuals, knew that the listed patents had expired, and then deliberately marked the expired patent information on them. "In the absence of such allegations [a] district court [is] correct not to draw any permissible inference of deceptive intent . . . lest [fraud-based patent claims] devolve into 'a magic incantation to be asserted against every patentee' and its 'allegation established upon a mere showing that'" products were marked with an expired patent number. Exergen, 575 F.3d at 1331 (citations omitted).

Accordingly, Hollander's complaint must be dismissed for failure to plead the intent to deceive element with sufficient particularity.

**C.     The Alleged Violations of § 292 That Occurred Prior to January 29, 2005 are Time-Barred.**

Several of Hollander's allegations of false marking are time barred. In counts 1 through 56, Hollander alleges that "Timex has violated 35 U.S.C. § 292(a) by marking or causing to be marked each unit of the [specific watch] and/or its accompanying

instruction booklet with the '096 Patent since February 4, 2004 for the purpose of deceiving the public." (See, e.g., Compl. ¶ 62.)  False marking claims under section 292(a) are subject to a five-year statute of limitations.  Arcadia Mach. & Tool Inc. v. Sturm, Ruger & Co., Inc., 786 F.2d 1124, 1125 (Fed. Cir. 1986) (citing 28 U.S.C. § 2462, which governs civil fines).

Hollander filed his complaint on January 29, 2010.  (Docket No. 1) Therefore, none of the purported violations which occurred five years prior to January 29, 2010—or January 29, 2005—are actionable.  As a result, these claims must be dismissed.

## V.   **CONCLUSION**

For the foregoing reasons, Hollander's complaint must be dismissed.

THE DEFENDANT,
TIMEX GROUP USA, INC., f/k/a
TIMEX CORPORATION

Validation of Signature Code JCR2107
/s/ Christopher Rooney
Christopher Rooney  (pa#42225)
Carmody & Torrance, LLP
195 Church Street
P.O. Box 1950
New Haven, CT  06509-1950
Telephone (203) 777-5501

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2010, a copy of the foregoing **Defendant's**

**Memorandum of Law In Support of Its Motion to Dismiss Plaintiff's Complaint** was

filed electronically and served by mail on all counsel and pro se parties unable to accept

electronic filing.   Notice of this filing will be sent by e-mail to all parties by operation of

the Court's electronic filing system and by mail to anyone unable to accept electronic

filing as indicated on the Notice of Electronic Filing.  Parties may access this filing

through the Court's CM/ECF System.

> Jacob C. Cohn
> Ilan Rosenberg
> Cozen O'Connor
> 1900 Market Street
> Philadelphia , PA 19103
>
> *Counsel for Plaintiff*

> Validation of Signature Code JCR2107
> /s/ Christopher Rooney
> Christopher Rooney  (pa#42225)
> Carmody & Torrance, LLP
> 195 Church Street
> P.O. Box 1950
> New Haven, CT  06509-1950
> Telephone (203) 777-5501

# EXHIBIT A

36TH CONGRESS,
1ST SESSION.

# S. 424.

---

## IN THE SENATE OF THE UNITED STATES.

APRIL 26, 1860.

Mr. FOSTER asked, and by unanimous consent obtained, leave to bring in the following bill; which was read twice, referred to the Committee on Patents and the Patent Office, and ordered to be printed.

---

# A BILL

To promote the progress of the useful arts.

1   *Be it enacted by the Senate and House of Representa-*

2   *tives of the United States of America in Congress assembled,*

3   That there shall continue to be connected with the Depart-

4   ment of the Interior an office to be called the Patent Office,

5   the chief officer of which shall be called the Commissioner

6   of Patents, who shall be appointed by the President, with

7   the consent of the Senate, with a salary of five thousand

8   dollars, who shall, under the advice of the Secretary of the

9   Interior, perform all the duties relating to patents for inven-

10   tions or discoveries, herein set forth, or which shall, by law,

11   be directed to be done; he shall have the custody of the

12   books, papers, models, seal, and all other things appertain-

13   ing to the office; he shall be entitled to send and receive,

14   by mail, free of postage, all mailable matter relating to the

28   first term; which certificate shall be recorded in the Patent
29   Office, and thereupon the patent shall have the same effect
30   in law as though it had been originally issued for twenty-
31   one years.  And each asssignee of any right in said patent
32   under the first term, at the expiration thereof, shall be en-
33   titled to the same right under the extended term on pay-
34   ment of the same compensation *pro rata*, and in the same
35   manner which he was liable to pay under the first term:
36   *Provided*, Such certificate of extension shall not be deliv-
37   ered, nor be in force, until the applicant shall have paid
38   twenty-five dollars in addition to the former fee: *And pro-*
39   *vided*, That no extension of a patent shall be granted after
40   the expiration of the first term.

1     SEC. 19. *And be it further enacted*, That if any person
2   shall have invented or produced any new design, shape, or
3   configuration for a manufacture, or to be placed on, attached
4   to, or made a part of any article of manufacture not in
5   public use or on sale in the United States, at the time of
6   his application, and shall apply for a patent therefor, and
7   pay the fee of fifteen dollars, the Commissioner, on due pro-
8   ceeding had, may issue a patent therefor for seven years,
9   subject to all the regulations and provisions for protecting
10   other patents, so far as they are applicable.

1     SEC. 20. *And be it further enacted*, That if any person

2   shall stamp on, or otherwise affix or attach to, any article,

3   or package of articles, not at the time secured by a patent,

4   the word patent, or any other word importing that the

5   same is secured by patent, with intent to deceive the pub-

6   lic, he shall be liable to a penalty of one hundred dollars,

7   one half to him who shall sue for and recover, and the other

8   half to the patent fund.

1   SEC. 21. *And be it further enacted*, That if any owner

2   of a patent, or of any interest therein, shall neglect to

3   stamp on, or otherwise affix or attach to, each article, or,

4   when that cannot be done, each package of articles, by him

5   offered for sale, the word patent, and the date of such

6   patent, he shall be liable to the same penalty, to be recov-

7   ered and disposed of as is provided in the preceding

8   section.

1   SEC. 22. *And be it further enacted*, That if any newly

2   invented article shall be constructed or compounded before

3   the inventor shall have made application for a patent, such

4   article shall be as free, for all purposes, as though no patent

5   had been issued : *Provided*, That the construction, use, or

6   sale of such free articles shall not invalidate the patent,

7   unless the same became public more than two years before

8   the application for a patent.

1   SEC. 23. *And be it further enacted*, That the Commis-

S. 424——3