# EXHIBIT "A"

New York (State) Supreme Court.

# REPORTS OF CASES

HEARD AND DETERMINED IN THE

# SUPREME COURT

OF THE

## STATE OF NEW YORK.

KA 1546 1869-95 v. 46

MARCUS T. HUN, REPORTER.

VOLUME XLVI.

1886.

045,249

HUN, 39.

NEW YORK:
BANKS & BROTHERS, LAW PUBLISHERS,
No. 144 NASSAU STREET.
ALBANY: 473 AND 475 BROADWAY.

## THE NEW YORK CONSOLIDATED CARD COMPANY, APPELLANT, v. THE UNION PLAYING CARD COMPANY, RESPONDENT,

*Action to restrain the use of a trade-mark — will not lie, if the plaintiff is chargeable with a false representation in using it — an article cannot be marked as patented after the patent has expired — when an action for an injunction will not be retained as one for damages.*

This action was brought to restrain the use of a trade-mark impressed upon the back of playing cards, manufactured by the plaintiff, and for an accounting of the gains and profits derived by the defendant from the sale of cards alleged to have been impressed in the similitude of those of the plaintiff. It was defended upon the ground that, even if the wrongful acts of the defendant were admitted, yet as the plaintiff itself was chargeable with a false representation in using the mark or device sought to be protected, it could not maintain the action. It appeared that upon one card in each pack, and upon the wrappers in which the cards were put up and sold, there were stamped the words "patent," and "squeezers," and "No. 35," and on the outside, conspicuously, the words "Hart's Patent Squeezers, manufactured by New York Consolidated Card Co., New York." The term "squeezer" was used to indicate that when the cards are squeezed from the corner they are separated so as to exhibit a small index figure on each card at the corner, and in that manner to enable the player to observe the cards he may have in his hands, without their liability to be seen by others. A patent for this device had been obtained in the year 1864 and assigned to the plaintiff, but it expired in 1881, and at the time in controversy the cards manufactured by the plaintiff were in no respect whatever within the protection of any patent.

*Held*, that the statement upon the cards and wrappers indicated that the cards were at the time of their sale protected by a patent.

That as the plaintiff had no patent at the time in controversy, this false statement deprived it of the right to restrain by injunction the use of the trade-mark by a competing dealer, for the reasons :

That it was a material misrepresentation which would ordinarily affect the conduct of buyers of these cards, limiting and restraining their dealings in them as a patented commodity.

That the marking or affixing to any unpatented article of the word "patent," or of any word importing that the same was patented, for the purpose of deceiving the public, was a direct violation of section 4900 of the United States Revised Statutes.

That the intent to deceive would be inferred from the act itself.

That the right of the plaintiff to use the words patent and patented in this manner in its business, was not affected by the claim that it had recorded its trade-mark under an act of congress, and was at liberty to refer to that as a

patent, as there was a wide difference between a patent and a mere trade-mark, and as the act of congress under which the record was made was unconstitutional.

That a dismissal of the complaint was proper, as the complaint was not so framed as to authorize the court to retain the action as one at law for damages, even if the misrepresentation of the article as a patented article would not be a defense to such an action.

APPEAL from a judgment in favor of the defendant, entered on a trial at Special Term.

*John E. Burrill*, for the appellant.

*Newell Martin* and *Charles Robinson Smith*, for the respondent.

DANIELS, J.:

The action was brought to restrain the use of a trade-mark impressed upon the backs of playing cards manufactured by the plaintiff, and for an accounting of the gains and profits derived by the defendant from the sale of cards alleged to have been impressed in the similitude of those of the plaintiff. The center piece of the device impressed upon the cards differed, but upon removing the center piece the residue of the impression upon the card, both in color and design, manufactured and sold by the defendant, was similar to that of the plaintiff. Sufficiently so probably to induce a purchaser making no critical observation or examination to purchase the defendant's cards, when it may have been the design to obtain those manufactured by the plaintiff. And when that may be the case and the plaintiff is not chargeable with any substantial misrepresentation in the device relied upon as a trade-mark, there it is the practice of the courts to restrain its use and application in the sale of similarly manufactured articles made and sold by other parties. Good faith and fairness in dealing on the part of the plaintiff is exacted before an action of this description can be maintained. Where that may appear there the law will protect the device adopted as a trade-mark by the plaintiff against its use by other parties. For that use would, in that state of the case be not only a fraud upon the party entitled to the use of the device, but also upon the public so far as purchasers might be induced by it to purchase the simulated article in place of that to which the device, or mark, should be legally applied. But where the party

complaining o:
with a false re
will not interf
party claiming
must himself, :
upon his part.
maintaining h
another. Thi
sidered and ap
(*Pidding* v.
385; *Palmer*
19 How., 567
*Vick*, 11 Har
218, 224.)
In the last c
by which it ha
applies for an
his property b
essential that t
*business conne*
leading repre
false statemen
he looses, and
court of equit
v. *Caswell* (93
This princi
manner in wl
violation cons
tiff's cards we
squeezers. Th
each pack, up
"patent;" in
"squeezers."
contained upo
the top "sque
The wrappers
upon the left
one corner an

complaining of the act of another is himself, or itself, chargeable with a false representation in the use of the device, there the law will not interfere for its protection. For the rule is settled that a party claiming protection against the fraudulent conduct of another, must himself, in the business, be free from the imputation of fraud upon his part. If he is not the court will not aid or assist him, by maintaining his own fraudulent practice, in restraining that of another. This principle has been frequently examined and considered and applied to controversies of this and a similar description. (*Pidding* v. *How*, 8 Simons, 477; *Fetridge* v. *Wells*, 13 How., 385; *Palmer* v. *Harris*, 60 Penn., 156; *Hobbs* v. *Francais*, 19 How., 567; *Marshall* v. *Ross*, L. R., 8 Eq., 651; *Edelsten* v. *Vick*, 11 Hare, 78; *Manhattan Medicine Co.* v. *Wood*, 108 U. S., 218, 224.)

In the last case the statement of the legal principle was approved by which it has been held that, "when the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not, in his trade-mark, *or in the business connected with it*, be himself guilty of any false or misleading representations, for if the plaintiff makes any material false statement in connection with the property he seeks to protect, he looses, and very justly, his right to claim the assistance of a court of equity." And it was in like manner approved in *Hazard* v. *Caswell* (93 N. Y., 259).

This principle was held to have been violated by the plaintiff in the manner in which those cards were put up and sold. This alleged violation consisted in the statement, or representation, that the plaintiff's cards were patented and sold under the appellation of patent squeezers. This representation was made upon one card included in each pack, upon the left of the lower end of which was the word "patent;" in the middle the words "35," and on the right the word "squeezers." The wrappers in which the cards were put up also contained upon the left side the words "patent squeezers," and at the top "squeezers No. 35," and at the bottom the word "patented." The wrappers in which one dozen packs were put up contained upon the left and right side of the paper the words "patent" upon one corner and "squeezers" upon the other. And conspicuously

on the outside in the center, the words, "Hart's Patent Squeezers, manufactured by N. Y. Consolidated Card Co., New York." The term "squeezers" was stated to indicate that when the cards are squeezed from the corner they are separated so as to exhibit a small index figure on each card at the corner, and in that manner to enable the player to observe the cards he should have in his hands, without their liability to be seen by others. A patent for this device had been obtained in the year 1864 and assigned to the plaintiff, but it expired in 1881, and at the time in controversy the cards manufactured by the plaintiff were in no respect whatever within the protection of any patent. The statement, as it was made upon one of the cards of each pack and upon the wrappers in which cards were put up and sold by the plaintiff, was such as to indicate that they were at the time to which the action relates, protected by a patent. That would be the understanding ordinarily produced in the minds of persons dealing with the article, from the use of the term "patent" and "patented," as they were connected with the sale of the plaintiff's cards. These words were not used combined with any others importing the fact that they were manufactured or sold under a patent previously existing and which at the time had expired. Upon the face of the wrapper of each pack, and also on the wrapper of a dozen packs of cards, they were called "patent squeezers." Wherever the phrase appeard it was so employed as to indicate the existing or present protection of a patent. This was an important fact, and as the plaintiff had no patent at the time in controversy, it formed a material misrepresentation which would ordinarily affect the conduct of buyers of these cards, limiting and restraining their dealings in them as a patented commodity. In addition to the circumstances that this was a material misrepresentation, the laws of the United States have prohibited every person from marking or affixing to any unpatented article the word "patent," or any word importing that the same is patented, for the purpose of deceiving the public. (U. S. R. S., 965, § 4900.) And where the prohibited term may be impressed upon or affixed to an article in violation of the law, it may be presumed from the act itself that it was done with the intent to deceive, for that is the natural consequence of its use, and a party is to be presumed to intend what is the natural or necessary result of his act. (*Filkins*

v. *People*, 69 N. Y., 101, 106, 107.) It is true that this effect was not given to the statute in *Wilson* v. *Singer Manufacturing Company* (9 Biss., 173). But it may well be doubted whether that decision can be supported under the very general and plain language of the statute which does not discriminate between a case where a patent has been issued and expired, and one where the word may be employed in the description or sale of an article for which no patent ever was issued. For the prohibition of the statute includes any unpatented article, and when a patent issued for an article has expired, it necessarily is from that time an unpatented article.

The point has been taken, in support of the appeal, that the use of the word patent and patented, in the manufacture and sale of the plaintiff's cards, was merely collateral to the device itself, which was made use of as the plaintiff's trade-mark; and when used in that manner, even though it should be a misrepresentation, the fact would not deprive the plaintiff of an injunction restraining the use of a trade-mark by a competing dealer. That view of the law, but upon a different state of facts, was adopted and supported in *Ford* v. *Foster* (Eng. L. R., 7 Chan. App., 611), and *Millington* v. *Fox* (3 Myl. & C., 338). But this was not a collateral misrepresentation within the rule supported by these and other cases, for the fact misrepresented accompanied each sale of the article which was made. It was impressed upon one of the cards, and it was conspicuously placed and repeated upon each of the wrappers, so that it was impossible for a person to buy either a single pack or a dozen packs of the cards without being immediately confronted with the representation that the article was manufactured and sold as a patented article. This representation was immediately connected with the article itself which was sold, and did not, as it did in the cases to which reference has been made, consist of an advertisement or a mere accompanying invoice.

It was held in *Leather Cloth Company* v. *American Leather Cloth Company* (1 Hemming & Miller, 271, 292, 293), that a representation of this description would not deprive the plaintiff of the right to an injunction where a patent had been issued for the invention, which at the time had ceased to exist. The case was distinguished, by these circumstances, from one where no patent had ever been issued, and where the representation that the article was patented

was held sufficient to deprive the plaintiff of the right to an injunction. (*Flavell* v. *Harrison* (19 Eng. Law and Eq., 15.) And a like distinction was drawn in another action in favor of the same plaintiff against Hirschfield (1 H. & M., 295). And as liberal a ruling was made concerning the use of a fictitious name in *Dale* v. *Smithson* (12 Abb., 237), and *Stewart* v. *Smithson* (1 Hilt., 119). But this distinction was deemed to be unsound when the decision of the vice-chancellor in the case of the Leather Cloth Company was appealed to the chancellor, for he held that the previous existence of an expired patent would not sanction the representation, afterwards made, that the article was patented. (*Leather Cloth Co.* v. *American Leather Cloth Co.*, 33 Law Jour. Chy., 199; 4 De G., J. & S., 142.) And this decision was afterwards affirmed on appeal to the house of lords. (11 House of Lords Cases, 522.) And the legal principle sustained by it was afterwards commended and approved in *Manhattan Medicine Company* v. *Wood* (108 U. S., *supra*). Upon the same subject, in *Selchow* v. *Baker* (93 N. Y., 59, 67), it was said by Judge RAPALLO, in the opinion of the court, that "the patentee relies for his protection upon his patent, and cannot, by calling the name of his patent a trade-mark, protect his monopoly after the patent has expired, or where it has no force." And the same view of the law was taken and followed in *Cheavin* v. *Walker* (Eng. L. R., 5 Chan. Div., 850.)

These authorities have the effect of overruling the previous decisions made by the vice-chancellor, tolerating the representation that the article sold was patented, when in fact it was not, provided a patent for it had previously been in existence, and placed the cases upon the same footing, maintaining the law in each instance to be that a misrepresentation of the article manufactured or sold as a patented article, when in fact it is not so, will deprive the parties whose conduct may be in that manner tainted of the right to an injunction interfering with the like business carried on by another party. And there is no good reason why the law should not be uniformly applied in that manner, for the misrepresentation and deception would be the same where a patent had been issued and expired, as it would be where no patent whatever had ever issued for the invention.

The plaintiff also endeavored to maintain this right to use the

words pate
fact that it
and was at
ence betw
sufficient t
the further
made was
deprive thi
The poir
retained f
determined
plaint of tl
damages.
tion and
appropriat
cause of a
court at
And in *F*
of the arti
at law for
This mi
as its trade
this action
dismissal
the facts

DAVIS,

Judgme

ROBERT

*Re*

This action
steam eng
chest of t
of operati
I

words patent and patented in this manner in its business, by the fact that it had recorded its trade-mark under the act of congress and was at liberty to refer to that as a patent. But the wide difference between a patent and a mere trade-mark would seem to be sufficient to expose the fallacy of this position. But if it would not, the further fact that the act of congress under which the record was made was unconstitutional, and, therefore, of no effect, would deprive this position of its support. (*U. S.* v. *Steffens*, 100 U. S., 82.)

The point has also been taken that the action should have been retained for trial as an action at law for damages, when it was determined that it was not a case for an injunction. But the complaint of the plaintiff was not framed so as to include an action for damages. It was framed for the object alone of obtaining an injunction and an accounting. The allegations inserted in it were appropriate for those objects, and none were made presenting a cause of action for damages. Neither does the attention of the court at the trial appear to have been directed to this position. And in *Ford* v. *Foster* (*supra*) it was held that a misrepresentation of the article as a patented article would be a defense to an action at law for damages.

This misrepresentation, even if the device adopted by the plaintiff as its trade-mark was infringed or used by the defendant, prevented this action from being maintained. The direction given for the dismissal of the complaint was warranted by the law applicable to the facts proved, and the judgment should be affirmed, with costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed, with costs.

---

## ROBERT W. GLEASON, RESPONDENT, *v.* JAMES W. SMITH, APPELLANT.

*Renting of machinery — the lessor is not bound to keep it in repair.*

This action, brought to recover the price agreed to be paid for the hire of a steam engine, boiler and pump, was defended upon the ground that the steam chest of the engine had in some manner broken down and become incapable of operating, and that the plaintiff had refused to repair it.