IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENTLEY A. HOLLANDER, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TIMEX GROUP USA, INC., f/k/a | : | |
| TIMEX CORPORATION, | : | No. 10-429 |
| Defendant. | : | |

MEMORANDUM

Schiller, J.                                                                                                           April 13, 2011

Timex Group USA, Inc. ("Timex") marked wristwatch instruction manuals and portions of its company websites with expired patent numbers. This alleged patent mismarking is the basis of Plaintiff Bentley Hollander's qui tam action, brought on behalf of the United States under 35 U.S.C. § 292(b). The parties' cross-motions for summary judgment are presently before the Court. Because Hollander offers no evidence that Timex marked unpatented articles or intended to deceive the public within the meaning of § 292, the Court will grant Timex's motion and dismiss this case.

I.  BACKGROUND

Timex patented its Inidglo wristwatches' "electroluminescent technology." (*See* Pl.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. [Pl.'s Mot. for Summ. J.] 9.) Hollander's claims concern three such patents: Nos. 4,527,096, 4,775,964, and 4,912,668 (collectively, the "Indiglo Patents."). The Indiglo Patents expired on February 8, 2004, January 11, 2008, and August 11, 2009, respectively. (Def.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. [Def.'s Facts] ¶¶ 2-4; Pl./Relator's Separate Statement of Undisputed Material Facts in Opp'n to Def.'s Mot. for Summ. J. [Pl.'s Facts] ¶¶ 2-4.) Hollander discovered that the Indiglo Patents nevertheless continued

to appear on various wristwatch manuals, both in hard copy and on Timex's websites. (Pl.'s Facts ¶¶ 6-8.) Hollander also found references to the Indiglo Patents in the websites' "Terms of Use" sections. (*Id.* ¶ 28.)

### A. Timex Product Manuals

Timex produces instruction manuals for its watches. (*Id.* ¶ 8.) When Timex develops a new product, the company assigns an employee or contractor to draft text explaining the "operational functions of the watch." (Def.'s Mem. of Law in Supp. of its Mot. for Summ. J., Aff. of Margaret Saleeby [Saleeby Aff.] ¶ 10; *see also* Pl.'s Facts ¶ 17.) A Timex production designer then formats the "operational text" into a "proper instruction manual style." (Saleeby Aff. ¶ 10; *see also* Pl.'s Facts ¶ 18.) This process includes adding graphics and standard text from prior manuals. (Def.'s Facts ¶ 19; Pl.'s Facts ¶ 19.)

This boilerplate "standard text" includes references to the Indiglo Patents. (Saleeby Aff. ¶ 10.) A Production Designer simply cut and pasted the patent numbers from old manuals, unaware that the "standard text" contained expired patent marks. (*See* Def.'s Facts ¶ 20-21.) No one from Timex directed the production designer to include references to the Indiglo Patents. (*Id.* ¶ 21.) However, Timex also occasionally referred to the Indiglo Patents in the body of its manual text. (Pl./Relator's Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. [Pl.'s Opp'n] Ex. 12, [Helix Manual] 4.)

Timex submits its instruction manuals to its in-house legal department for review before releasing them. (*See* Pl.'s Facts ¶ 22.) Timex's counsel reviewed the manuals at issue in this case. (*See* Pl.'s Opp'n Ex. 10 [Instruction Book Tracking Sheet for Manual W-212].) Timex also revised the manuals after the legal department had reviewed them. (*Id.* [e-mails dated April 8, 2005 and

March 2, 2006]; *Id*. Ex. 11, [Timex Privilege Log].). However, Timex did not remove the expired patent marks. (*See* Def.'s Facts ¶¶ 20-22.)

### B. Dissemination of the Timex Product Manuals

Timex disseminated the product manuals referencing the Indiglo Patents in two ways: in its product packaging and on its company web sites. (Pl.'s Facts ¶ 8; Def.'s Facts ¶¶ 7, 32.)

#### 1. *Manuals in product packaging*

Timex packages its watches in cardboard boxes for sale. (*See, e.g.*, Def.'s Mot. for Summ. J. Ex. A [Timex Indiglo Watch packaging] and Ex. B [Tmex Ironman Road Trainer packaging].) These boxes contain one of two types of manuals: a folded "origami" packet or a bound "book-like" manual. (Def.'s Facts ¶¶ 10-13.)

The "origami" manuals consist of a thin sheet of onion paper folded into a small rectangle. (*Id*. ¶¶ 11, 15.) Timex encloses the folded paper in the box alongside the watch either on its own or in a small pod. (*Id*. ¶ 15.) The "book-like" manuals are "simply laid separately inside the box" alongside the watch. (*Id*. ¶ 16.) Hollander characterizes this method of packaging the manual with the watch as sealing the booklet "in the same single-piece plastic enclosure that holds the watch that is contained within the exterior cardboard box." (Pl.'s Facts ¶¶ 14, 16.)

#### 2. *Manuals on Timex websites*

Timex operates a number of websites through which it sells products to individual consumers and retailers. (Pl.'s Facts ¶ 23; Def.'s Facts ¶ 23.) Its consumer-oriented site, Timex.com, allows users to obtain product information in a variety of ways, via: (1) an internal search engine; (2) a drop-down menu linked to various categories of products; (3) a gallery of clickable images at the top of the page representing different watch styles; (4) a product selector; (5) a "carousel" of rotating

watches below the product selector; (6) red buttons linked to particular classes of watches, such as "Women's Watches" or "Men's Watches"; and (7) a link labeled "Product Instruction Guides & Downloads." (Pl.'s Facts ¶ 25; Def.'s Facts ¶ 25.)

In addition, each watch Timex offers for sale on Timex.com has its own individual product page. (Def.'s Facts ¶ 26.) These pages feature an image of the watch, consumer reviews, and a brief discussion of the watch's features. (*Id*.) The product pages do not reference the Indiglo Patents. (*See, e.g.*, Pl.'s Opp'n Ex. 7 [Product Page for Timex Ironman Road Trainer].) However, a link at the bottom of each product page provides access to "Product Instruction Guides & Downloads," including copies of the product manuals which cite the Indiglo Patents. (*Id*.; *see also* Pl.'s Facts ¶ 34; Def.'s Facts ¶ 32.) Hollander also discovered that between January 2005 and the present the public could access the product manuals via links on Timex.com labeled "Watch Instructions" and "Manuals/Downloads." (Pl.'s Facts ¶ 25.) The manuals are all available to the general public online and are not restricted to owners of specific Timex products. (Pl.'s Facts ¶ 9.)

### C. Other References to the Indiglo Patents on Timex Websites

In addition to the patent numbers on the product manuals, Timex's websites contain references to the Indiglo Patents in their "Terms of Use" and "Terms and Conditions." A link in the "footer" of Timex.com provides access to the site's "Terms of Use" page. (Def.'s Facts ¶ 36.) One can also access Timex.com's "Terms and Conditions" page from individual product pages. (Pl.'s Facts ¶ 26.) Timex-run "micro-sites" dedicated to particular watches also link to the "Terms of Use." (*See* Def.'s Facts ¶ 37.)

A similar "Terms of Use" page links from Timex's "Business-to-Business" website, btb.timex.com. The Business-to-Business site advertises Timex products to resellers. (Pl.'s Opp'n

11.) Though Timex removed this language around March 4, 2011, the Business-to-Business site's "Terms of Use" page previously stated that all of its Inidiglo watches were covered by the Indiglo Patents. (Pl.'s Opp'n 12, Ex. 3, [B2B Terms of Use].)

### D. Procedural History

Hollander filed this action on January 29, 2010. Timex filed a motion to dismiss on March 2, 2010, arguing that fifty-six counts of mismarking in Hollander's Complaint alleged violations that occurred prior to January 29, 2005, thus falling beyond the five-year statute of limitations governing civil fines under the mismarking statute. The Court granted Timex's motion with respect to these claims. Thus, for the purposes of the instant motions, the Court will only consider Hollander's allegations of mismarking occurring on or after January 29, 2005.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The same standard applies to cross-motions for summary judgment. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving

party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**III.  DISCUSSION**

35 U.S.C. § 292 permits anyone to sue persons who falsely represent unpatented items to be patented. *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010). The statute provides that "[w]hoever marks upon, affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented for the purpose of deceiving the public" will incur a fine of up to $500 for each offense. 35 U.S.C. § 292(a).

The Federal Circuit has declined to interpret § 292 as a "statute of strict liability for mismarking." *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005). A false marking claim thus has two elements: (1) falsely marking an unpatented article; and (2) intent to deceive. *Forest Grp. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009). Hollander has not presented evidence that a genuine issue of material fact exists with respect to either element.

**A.  False Marking**

Hollander contends that the patent marks on Timex's manuals and websites constitute false marking within the meaning of § 292(a). Specifically, Hollander asserts that patent marks on physical copies of Timex's manuals, packaged together with Timex watches, are "marked" or "affixed" to the watches within the meaning of § 292. (Pl.'s Opp'n 6-8.) Hollander also argues that the electronic copies of its manuals available on its websites, as well as its websites' "Terms of Use,"

constitute "advertising," thus rendering Timex liable for using expired patent marks "in advertising." (*Id*. at 11-12.) Neither theory survives Timex's motion for summary judgment.

          1. *Instruction manuals are neither unpatented articles nor affixed to them*

              a. *The manuals are not unpatented articles*

Hollander argues markings on product manuals constitute markings on the watches themselves because "without the manual, the product is practically useless." (*Id*. at 6.) Hollander cites no authority in support of this position, nor can the Court identify any legal basis upon which to conclude that a patent mark on an instruction manual constitutes a patent mark on an "unpatented article" within the meaning of § 292. To the contrary, another district court reached the opposite conclusion on similar facts.

Assessing a false marking claim under § 292, another district court determined that patent marks on warranty cards packaged with Oakley eyewear were not "marked upon" the eyewear or its packaging within the meaning of the false marking statute. *Oakley, Inc. v. Bugaboos Eyewear Corp.*, Civ. A. No. 09-2037, 2010 WL 5173678, at *5 (S.D. Cal. Dec. 15, 2010). Applying the plain language of § 292, the *Oakley* court held that patents listed on such product inserts — found inside the product packaging — "cannot be subject to the false marking statute under the 'marks upon' language." *Id*. at *6. As the *Oakley* court observed, the statute's language clearly does not extend to product inserts contained within product packaging. *Id.* Given the statute's unambiguous text, the Court finds the *Oakley* analysis persuasive.

Because Hollander has produced no evidence that Timex marked an "unpatented article" within the meaning of § 292, he cannot sustain a claim under the "marks upon" language of the statute.

7

### b. The manuals are not affixed to unpatented articles

Hollander also argues that the instruction manuals are "affixed" to the watches because they are tightly packaged together with the watches. (Pl.'s Facts ¶ 14; Pl.'s Opp'n 6-7.) Timex has submitted packaging exemplars for its "origami" and "booklet" manuals, both of which Hollander agrees accurately represent the placing of the manuals within the product packaging. (See Pl.'s Facts ¶¶ 14-16.) The undisputed evidence in this case demonstrates that the manuals are in no way "affixed" to the watches they describe. As the Oakley court observed, "one pea in a pod is not affixed to the other." *Oakley*, 2010 WL 5173678, at *6. Though packaged together, the manuals and watches are not affixed to one another. *See id*. Hollander's claims thus also fail under the "affixed to" language of § 292.

### 2. False marks used in advertising

Hollander also claims Timex is liable under § 292 for using false patent marks in advertising. This alleged "advertising" consists of Timex's manuals and its websites' "Terms of Use." However, Hollander has introduced no evidence that any reference to the Indiglo Patents was used "in advertising" within the meaning of § 292.

### a. Timex manuals are not advertising

Timex's manuals, as packaged in Timex product boxes or offered on its web sites, do not advertise its products. Courts look to the dictionary definition of "advertising" in applying the term to false marking cases. *Oakley*, 2010 WL 5173678, at *6; *see also Inventorprise, Inc. v. Target Corp.*, Civ. A. No. 09-380, 2009 WL 3644076, at *4 (N.D.N.Y. Nov. 2, 2009) (citing Webster's Third New International Dictionary (1993)) (additional citations omitted). For these purposes, advertising is the act of calling something to the attention of the public, especially by means of

printed or broadcast paid announcements. *Oakley*, 2010 WL 5173678, at *6; *see also Presidio Components Inc. v. Am. Technical Ceramics Corp.*, 723 F. Supp. 2d 1284, 1334 n.41 (S.D. Cal. 2010) (noting that "[t]o be used 'in advertising,' the false marking must have occurred in a medium or through a channel designed to promote the unpatented product to consumers."). In other words, the "term 'advertising' implies an act soliciting the general public regarding the product." *Inventorprise*, 2009 WL 3644076, at *4.

Like the warranty cards at issue in *Oakley*, the physical instruction manuals in this case are "invisible until the product is purchased and the packaging opened." *Oakley*, 2010 WL 5173678, at *6. They are thus not "advertising" or evidence that Timex used false patent marks "in advertising."

Hollander also argues that product manuals available on Timex websites must be advertising because: (1) they are available to the general public; and (2) they provide more detailed descriptions of watch functions than other portions of Timex's websites. (Pl.'s Facts ¶ 9.) In addition, Hollander submits an article from the Journal of Interactive Advertising, which describes the role of corporate web sites as advertising tools. (Pl.'s Opp'n Ex. 19 [Interactive Advertising article].)

While corporate web sites are undoubtedly useful advertising channels, Timex has shown that the manuals reproduced on its websites are not advertising. To access a manual containing a reference to the Indiglo Patents from Timex's commercial website, a consumer would have to navigate away from the "product pages" which allow users to purchase watches. (*See* Pl.'s Opp'n Ex. 7 [Timex Ironman product page].) The manual index pages feature few or no graphics and generally contain no content promoting the products to consumers. (*See* Pl.'s Opp'n Exs. 5 and 6 [product manual index pages].) Users thus must click through a number of pages and scour the

9

manual's fine print to discover a reference to one of the Indiglo Patents. This is the electronic equivalent of a patent mark facing the wall; though accessible to the public, it is neither readily visible nor intended to call the public's attention to the product. *See Inventorprise*, 2009 WL 3644076, at *5.

        b.   *Timex "Terms of Use" is not advertising*

This analysis applies with equal force to Hollander's assertion that Timex's "Terms of Use" constitute advertising. Hollander argues the websites' "Terms of Use" amount to advertising because they "define the scope of users' agreement to browse and use the website." (Pl.'s Facts ¶ 40.) Hollander observes that the "Terms of Use" contain language warning users that "by accessing or using this Site, you ("User") agree to comply with the terms and conditions governing User use of any areas of the Timex web site." (*Id*. ¶ 49; *see also* Pl.'s Opp'n Ex. 16 [Mar. 2005 Terms of Use].) The "Terms of Use" refer to the Indiglo Patents only after outlining acceptable "Use of Site," Timex's rights in site content, acceptable "online conduct," other disclaimers, Timex's privacy policy, usage by children under 13, export issues, indemnity, copyright, and trademarks. (Mar. 2005 Terms of Use 1-3.)

Notwithstanding their mandatory language, the "Terms of Use" are not advertising, nor are their references to the Indiglo Patents used in advertising. These pages unambiguously demonstrate that users need not access the "Terms of Use" to purchase a watch from a Timex web site. Indeed, the link Timex provides to its "Terms of Use" from a typical product page is at the very bottom of the page footer, in the smallest font on the page. (*See, e.g.,* Timex Ironman product page.) The user would then have to scroll through pages of unrelated content to reach a reference to the Indiglo Patents. The Court therefore concludes that the patent numbers in the "Terms of Use" are not false

marking "in advertising," as they are not found "in a medium or through a channel designed to promote the unpatented product to consumers." *See Presidio*, 723 F. Supp. 2d at 1334 n.41.

### 3. *Hollander's failure to show false marking*

The statutory language of § 292 is unambiguous. *Solo Cup*, 608 F.3d at 1361-62 (declining to consider legislative history of false marking statute given its unambiguous terms). The statute is not intended to create a treasure hunt for relators scouring department store shelves or corporate websites for obscure references to expired patents; it prohibits readily visible marks – on products themselves, affixed to products, or used in advertising in connection with products – falsely indicating that an unpatented article enjoys patent protection. Hollander has not shown any such false marking in this case.

## B. Intent to Deceive

Hollander's failure to show that Timex engaged in false marking is fatal to his claims. Nonetheless, the Court will address the intent to deceive requirement of § 292. A § 292 relator must show that the alleged false marker acted with "a purpose of deceit, rather than simply knowledge" that he mismarked a product. *Solo Cup*, 608 F.3d at 1362. A plaintiff may trigger a rebuttable presumption that the defendant acted with intent to deceive by showing a combination of false marking and knowledge that the marking was false. *Id.*; *see also Clontech*, 406 F.3d at 1353. However, the undisputed evidence in the record demonstrates that Hollander cannot show Timex acted with knowledge — much less intent to deceive — in marking its manuals and websites with expired patent numbers.

### 1. *Timex's knowledge of false marking*

An expired patent mark is a false patent mark for the purposes of § 292. *See Solo Cup*, 608

F.3d at 1361. The parties do not dispute that the Indiglo Patents were valid, but expired prior to January 2005. (Pl.'s Facts ¶¶ 1-4.) Thus, Timex knew it was falsely marking products to the extent it knew it had marked them with the Indiglo Patents after they expired. Hollander offers two bases for a finding that Timex knowingly engaged in such mismarking: (1) Timex admitted knowledge of the Indiglo Patents expiration dates; and (2) Timex submitted its instruction manuals to counsel for review. (Pl.'s Opp'n 15, 18.) Hollander's allegations are not supported by evidence sufficient to show corporate knowledge under § 292.

*a.     Corporate scienter under § 292*

Timex admitted in its Answer that it was aware of the dates the Indiglo Patents' terms of enforceability ended; the company denied, however, that it knowingly engaged in false marking. (*See* Timex Answer ¶¶ 32, 42, 52.) Hollander urges the Court to impute the knowledge of the Timex employees aware of the Indiglo Patents' expiration dates to the company as a whole. Such generalized reliance on "concepts of agency and collective corporate knowledge" provides weak armor for § 292 claims facing a defendant's motion for summary judgment. *See United States ex rel. Heathcote Holdings Corp., Inc. v. William K. Walthers, Inc.*, Civ. A. No. 09-6722, 2011 WL 874148, at \*2 (N.D. Ill. Mar. 11, 2011). As the Northern District of Illinois recently concluded in *Heathcote Holdings*, plaintiffs cannot rely on the "aggregate knowledge" of a company's employees to show corporate scienter under § 292. *See generally id*.

The defendant in *Heathcote Holdings*, toy manufacturer William K. Walthers, Inc. ("Walthers"), acquired the toy-making division of another company, Life-Like Products. *Id*. at \*1. The acquisition included a line of toy race cars branded as Darda Toys. *Id*. Darda Toys' product packaging included references to various patents, including patents which had expired over a decade

12

earlier and — due to an apparent typographical error — a patent for a turbo-jet aircraft engine thrust-measuring device. *Id*. at *2. Walthers conceded that it had marked products with expired and inaccurate patent numbers with respect to its Darda Toys packaging, but denied that it acted with intent to deceive. *Id*. at *1.

Walthers retained Life-Like employees to package and label its Darda products. *Id*. These employees "continued to use their previously established procedures for determining what items should be included" on product packaging, including "standard graphics, copy, and logos, as well as patent, copyright, and trademark information." *Id*. Walthers submitted deposition testimony from a product packaging supervisor, who stated that she copied blocks of text from old packaging. *Id*. She had not verified that the patent information on the labels was correct; she had no "knowledge or training to determine whether a particular patent number would apply to a particular product." *Id*. She simply included the patent numbers "because they had always been there." *Id*. (internal quotation marks omitted.)

The plaintiff argued the employees' ignorance was irrelevant, because other Walthers employees were aware that Walthers had not purchased more than one patent in acquiring Life-Like Products. *Id*. at *2-3. In the absence of other authority discussing corporate scienter in § 292 cases, the court looked to interpretations of the Private Securities Litigation Reform Act ("PSLRA"). *Id*. at *3. Like § 292, the PSLRA demands "proof of the defendant's specific intent to deceive." *Id*. Reviewing a number of PSLRA cases involving allegations of corporate scienter, the court concluded that Walthers's false marking was accidental because the employees responsible for actually marking the products did not realize the markings were expired or inapplicable. *Id*. at *4 (citing *Makor v. Tellabs*, 513 F.3d 702, 707 (7th Cir. 2008)). Recognizing that Walthers's "senior

13

management may have been careless in failing to detect" the false marking, the court held that "§ 292, like the PSLRA, requires more than carelessness as a basis for liability." *Id*.

### b. The production designers' knowledge of mismarking

Hollander, like the plaintiff in *Heathcote Holdings*, has produced evidence of carelessness, not knowledge. Courts in this Circuit have held that corporate scienter may arise "where an employee, acting with scienter, had some direct involvement with a false or misleading statement, such as by ordering or approving a false or misleading statement, or furnishing information or language for inclusion therein." *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 403 (D. Del. 2010) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)) (discussing corporate scienter in securities litigation context). Here, there is no evidence that the individuals responsible for designing Timex's instruction manuals either: (1) had any training in patent law ; (2) knew when patent terms generally end; or (3) knew when the Indiglo Patents expired. (Saleeby Aff. ¶ 14.) Indeed, the production designer's conduct in marking the instruction manuals was nearly identical to the Walthers employees' described in *Heathcote Holdings*: she mechanically cut and pasted boilerplate text from older manuals. (*Id*. at ¶ 10; see also Def.'s Facts ¶¶ 20-21.)

Hollander attempts to rebut this evidence that the production designer made an innocent mistake by referring the Court to a eight-year-old Timex instruction manual. (Pl.'s Facts ¶ 22.) The manual reads in relevant part as follows:

> **INDIGLO® Night-light**
> Your new watch is tech. So much so that even the modest sounding ELECTROLUMINESCENT TECHNOLOGY used in the INDIGLO Night-light had to be patented (US Patent Number 4,527,096 and 4,775,964) — you know, to keep it out of the "wrong" hands. At

> night and other low-light conditions, it lights up the entire face of the watch. You can't just give science like that away. Anyway, it's activated by pressing the crown all the way in to position 1 (see figure 1.B.)

(Helix Manual 4.) The manual goes on to describe the watch's "Night-Mode" feature: "If you are not wearing your new watch, you should put it on your wrist now. Your watch is equipped with NIGHT-MODE (US Patent Number 4,912,688). It enhances our already amazing ELECTROLUMINESCENT TECHNOLOGY. Do not fear it." (*Id.*) Hollander contends that this language shows "Timex's designers know, at the very least, that patents, and their marking, are intended to prevent competitors from using Timex's technology." (Pl.'s Facts ¶ 22.)

Timex discontinued the manual Hollander cites in 2003, two years before the January 2005 cutoff date for Hollander's remaining claims. (*See* Def.'s Reply in Resp. to Relator's Mem. in Opp'n to Def.'s Mot. for Summ. J. 15.) There is no evidence that the production designer responsible for the manuals at issue in this case had anything to do with the Helix manual. (*See* Saleeby Aff. ¶ 2 ("I have been employed as a Production Designer . . . [by Timex] since 2005.").) Even assuming the Helix manual constitutes evidence that Timex's production designers had some rudimentary understanding of patent law, it provides no evidence of their knowledge with respect to the Indiglo Patents' expiration dates or their continued appearance in the manuals' boilerplate text.

        *c.*    *Timex's legal department and outside counsel*

Hollander has also offered evidence that Timex submitted its instruction manuals to counsel for review, but continued to produce manuals with expired patent marks despite making other revisions. (Instruction Book Tracking Sheet for Manual W-212; e-mails dated Apr. 8, 2005 and Mar. 2, 2006; Timex Privilege Log.). Hollander relies on *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*

to support his argument that "Timex and its counsel are conclusively presumed to know the law, regardless of the specific knowledge and/or understanding of the law of any particular lay employee." (Pl.'s Facts ¶ 22 (citing *Brasseler*, 267 F.3d 1370 (Fed. Cir. 2001).)

*Brasseler* addressed attorney conduct in the context of claims for inequitable conduct in the prosecution of patents. *Id*. at 1380. In that case, the Federal Circuit found that patent attorneys acted with deceptive intent where the undisputed facts in the record showed that they had consciously refused to investigate and disclose material information to the USPTO. *Id*. at 1382-85. It does not, however, help Hollander connect the dots between Timex's counsel and knowledge that the manuals were mismarked.

Hollander offers reams of manual revisions and intra-office emails from Timex's document production purportedly showing that Timex "reviewed, revised and edited its owner's instruction manuals since the expiration of the [Indiglo Patents], and . . . regularly changed the content of those manuals and can easily manipulate the content of its website," but failed to remove the alleged false markings "despite knowing that they were false." (*See* Pl.'s Mot. for Summ. J. Ex. 10; Pl.'s Opp'n Ex. 10.) He does not, however, identify any evidence demonstrating that Timex's counsel were aware the Indiglo Patents improperly appeared on instruction manuals or corporate websites. The Court's review of this material reveals that, at the most, Timex's counsel failed to identify the references to the Indiglo Patents in the draft manuals. (*See, e.g.*, Pl.'s Opp'n Ex. 10 at TIMX0000418.) Hollander offers no evidence that Timex attorneys were aware the manuals featured expired patent numbers in their fine print.

    d.  *Hollander's failure to show knowledge of false marking*

Timex revised other sections of its instruction manuals but failed to remove references to

16

expired patents. A false marking plaintiff cannot show that a defendant knew it marked packaging with expired patents simply because the defendant updated its labels or created new packaging. *Brinkmeier v. BIC Corp.*, 733 F. Supp. 2d 552, 653 (D. Del. 2010) (citing *Shizzle Pop, LLC v. Wham-O, Inc.*, Civ. A. No. 10-3491, 2010 WL 3063066, at *4 (C.D. Cal. Aug. 2, 2010); *see also Public Patent Found., Inc. v. GlaxoSmithKline Consumer Healthcare, L.P.*, Civ. A. No. 09-5881, 2011 WL 1142917, at *3 (S.D.N.Y. Mar. 22, 2011) (citing *In re BP Lubricants USA, Inc.*, Misc. No. 960, 2011 WL 873147, at *3 (Fed. Cir. Mar. 15, 2011)) (finding allegations that false marking defendant employed in-house patent attorneys and regularly litigated patent infringement cases insufficient to show the "requisite intent" for a § 292 action to survive defendant's motion to dismiss.).

A court in this District recently examined the question of a false marking defendant's intent to deceive in light of the defendant's repeated post-expiration revisions to its packaging. *Hollander v. Ortho-McNeil-Janssen Pharm., Inc.*, Civ. A. No. 10-836, 2011 WL 1288676, at *5 (E.D. Pa. Apr. 5, 2011) (citing *BP Lubricants*, 2011 WL 873147, at *4) (additional citations omitted). On a motion to dismiss, the court held that allegations of multiple packaging revisions "coupled with other indicia of the defendant's knowledge of a patent's expiration" were sufficient to carry false marking claims past a motion to dismiss. *Id*. at *5-6. In *Ortho-McNeil-Janssen*, Hollander identified clear indications that the false marking defendant was on notice that its patents had expired. In addition to packaging revisions, Hollander alleged the defendant had brought infringement actions based on three expired patents and reviewed applications by generic drug manufacturers to the Center for Drug Evaluation and Research which referenced the expiration of the defendant's patents. *Id*. In this case — after discovery — Hollander has produced no such

evidence. Without evidence that Timex knowingly marked its manuals with expired patents, Hollander's claims cannot proceed to a jury.

### 2. *Timex's intent to deceive*

Even assuming Hollander could show that Timex knew it marked manuals with expired patent numbers, his claims must be dismissed. Hollander would enjoy a rebuttable presumption in his favor that Timex acted with intent to deceive if he could show Timex acted with knowledge that it marked products with false patent marks. *See Solo Cup*, 608 F.3d at 1362. The Federal Circuit has held that this presumption is weaker, however, when the "false markings at issue are expired patents that had previously covered the marked products." *Id*. at 1364. Additionally, evidence that a defendant knew that a marking was false is not enough to prove intent if the defendant can show that it did not consciously desire to deceive the public. *Id*. Thus, a defendant may know a patent marking to be false and yet not violate § 292 if it did not act with the requisite intent. *Brinkmeier v. Graco Children's Prods. Inc.*, Civ. A. No. 09-262, 2011 WL 772894, at *5 (D. Del. Mar. 7, 2011).

Timex has provided evidence ranging from the structure of its web sites to its production designers' knowledge of patent law and mechanical manual design process, all of which indicates that Timex's purpose was not to deceive the public. Hollander has offered no evidence to the contrary. *See Solo Cup*, 608 F.3d at 1362-63. At best, Hollander has provided evidence that Timex was negligent in failing to detect and remove scattered references to expired patents in obscure corners of its manuals and websites. Such evidence that Timex employees may have made mistakes in screening this content cannot sustain a false marking claim. *See Bow Jax Inc. v. Sims Vibration Lab., Inc.*, Civ. A. No. 09-47, 2011 WL 1304623, at *6 (E.D. Wash. Apr. 6, 2011) (granting

18

summary judgment for false marking defendant because alleged mismarking amounted to "nothing more than mistakes made by employees.").

## IV.     CONCLUSION

Hollander has failed to demonstrate a genuine dispute of material fact with respect to false marking on Timex's manuals or websites.  Hollander has also failed to introduce evidence that Timex acted with the requisite intent to trigger liability under § 292.  Timex is thus entitled to judgment as a matter of law.  An Order consistent with this Memorandum will be docketed separately.